**O**
**JS-6**

# United States District Court
# Central District of California

MITSUI SUMITOMO INSURANCE
USA, INC.; and MITSUI SUMITOMO
INSURANCE COMPANY OF
AMERICA,

               Plaintiffs,

    v.

KYOCERA MITA CORPORATION;
KYOCERA DOCUMENT SOLUTIONS,
INC.; KYOCERA DOCUMENT
TECHNOLOGY CO., LTD.; and DOES
1–40,

               Defendants.

Case № 2:15-cv-01860-ODW-FFM

**ORDER GRANTING
DEFENDANTS' MOTIONS TO
DISMISS [7, 12]**

## I.  INTRODUCTION

Plaintiffs Mitsui Sumitomo Insurance USA, Inc. and Mitsui Sumitomo Insurance Company of America ("Plaintiffs") seek reimbursement from Defendants Kyocera Mita Corporation, Kyocera Document Solutions, Inc. ("KDS"), and Kyocera

Document Technology Co., Ltd. ("KDT") for damages paid on behalf of Plaintiffs' insured, Kyocera Document Solutions America, Ltd. ("Kyocera America"), a copier distributor.   Plaintiffs allege that KDS and KDT designed and manufactured a defective copier that caused a fire, and that Defendants should reimburse Plaintiffs for the resulting damage.   KDS and KDT now move to dismiss the matter for lack of personal jurisdiction, arguing that both corporations lack any connection to California that could establish the minimum contacts required for this Court to exercise jurisdiction.   For the reasons discussed below, the Court **GRANTS** Defendants' Motions to Dismiss.[1]   (ECF Nos. 7, 12.)

## II.    FACTUAL BACKGROUND

Kyocera America, a product distributor, is insured by Plaintiffs.   (Complaint ("Compl.") ¶ 8, Not. of Removal, Ex. 1, ECF No. 1.)   On October 11, 2008, an allegedly defective copier distributed by Kyocera America caused a fire at a commercial building in Chatsworth, California.   (*Id.*)   The copier was designed and manufactured by KDS and KDT and contained an allegedly defective diode manufactured by Japanese electronics company Shindengen Electric Manufacturing.   (*Id.* ¶¶ 17–18.)   The insurers of the commercial building sued Kyocera America for damages resulting from the fire.   (*Id.* ¶ 9.)   After settling claims with the commercial building's insurers on behalf of Kyocera America, Plaintiffs brought this indemnification claim against KDS, KDT, and Shindengen.[2]   (*Id.* ¶¶ 17–18.)

KDT and KDS sell and manufacture printers and copiers.   (KDT Mot. to Dismiss ("KDT Mot."), Okajuma Decl. ¶ 9, ECF No. 12; KDS Mot. to Dismiss ("KDS Mot."), Inoko Decl. ¶ 9, ECF No. 7.)   KDT is a Chinese company with its principal place of business located in China.   (Inoko Decl. ¶ 2.)   KDT does not, nor

---

[1] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L.R. 7-15.

[2] After a successful Motion to Dismiss based on a lack of personal jurisdiction, Shindengen is no longer a party to this action.  (ECF No. 29.)

has it ever, maintained an office or facility in California, sold products directly to California, or employed agents or employees in California. (*Id.* ¶ 2–8.) All of KDT's products are sold to Kyocera Document Technologies, a Hong Kong-based corporation, which, in turn, are then sold to KDS to be distributed internationally. (*Id.* ¶ 9.)

KDS is a Japanese company with its principal place of business located in Japan. (Okajuma Decl. ¶ 2.) KDS does not, nor has it ever, maintained an office or facility in California, sold products directly to California, or employed agents or employees in California. (*Id.* ¶ 3–8.) The only direct contact KDS has had with California, as far as the Court is aware, is a 2014 business meeting with a supplier In Irvine, California, six years after the incident that sparked this lawsuit. (Supplemental Opposition ("Supp. Opp'n") 8, ECF No. 49.) All KDS products that are sold in the United States are distributed by Kyocera America, a wholly-owned subsidiary of KDS (*Id.* ¶ 11.) In this capacity, Kyocera America purchases products from KDS, transports them to the United States, and sells them to local distributors for its own profit. (*Id.* ¶ 10.) KDS does not exercise day-to-day control over Kyocera America; nor does KDS provide Kyocera America with operating capital. (*Id.* ¶ 11.) However, KDS currently loans twenty employees to Kyocera America and loans another fifteen employees to Kyocera Document Solutions Development America ("KDDA"), another member of the Kyocera corporate family. (Supp. Opp'n 3.)

Plaintiffs filed this indemnity action in the Los Angeles Superior Court on December 10, 2014. (Not. of Removal ¶ 1, ECF No. 1.) KDS then timely removed the action to this Court. (ECF No. 1.) On March 20, 2015, KDS filed a Motion to Dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). (ECF No. 18.) Plaintiffs timely opposed, and KDS timely replied. (ECF Nos. 19, 22.) On April 27, 2015, KDT also filed a Motion to Dismiss on personal jurisdiction grounds. (ECF No. 12.) Again, Plaintiffs timely opposed, and KDT

1  timely replied.  (ECF Nos. 20, 24.)  The Court granted Plaintiffs' request for limited
2  jurisdictional discovery on September 25, 2015.  (ECF No. 28.)  Plaintiffs then filed a
3  Supplemental Opposition to both Motions to Dismiss on April 15, 2016, and
4  Defendants filed a joint Supplemental Reply on May 2, 2016.  (ECF Nos. 49, 60.)
5  KDS and KDT's Motions to Dismiss are now before the Court for decision.

### III.   LEGAL STANDARD

6
7       When a defendant moves to dismiss a complaint for lack of personal
8  jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the
9  burden of demonstrating that jurisdiction is appropriate.  *Sher v. Johnson*, 911 F.2d
10  1357, 1361 (9th Cir. 1990).  If the motion to dismiss is based on written materials
11  rather than an evidentiary hearing, the plaintiff need only make a prima facie showing
12  that jurisdiction exists.  *Id.*  The court takes the plaintiff's uncontroverted version of
13  facts as true, and any conflicts over the facts must be resolved in the plaintiff's favor.
14  *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001).
15
16       "The general rule is that personal jurisdiction over a defendant is proper if it is
17  permitted by a long-arm statute and if the exercise of that jurisdiction does not violate
18  federal due process."  *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir.
19  2006).  California's long-arm statute is coextensive with federal due process
20  requirements, so the jurisdictional analysis for a nonresident defendant under state law
21  and federal due process is the same.  *See* Cal. Code Civ. Proc. § 410.10; *Roth v.
22  Garcia Marquez*, 942 F.2d 617, 620 (9th Cir. 1991).
23       The Fourteenth Amendment's Due Process Clause allows a court to exercise
24  personal jurisdiction over a defendant who has sufficient "minimum contacts" with
25  the forum state such that the exercise of jurisdiction "does not offend traditional
26  notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S.
27  310, 316 (1945) (quotation marks omitted).  Applying the "minimum contacts"
28  analysis, a court may exert either general jurisdiction or specific jurisdiction over a

nonresident defendant. *Unocal*, 248 F.3d at 923. General jurisdiction is established when the defendant's activities in the forum state are "continuous and systematic" in such a way that justifies the exercise of jurisdiction, even if the cause of action is unrelated to these activities. *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1050 (9th Cir. 1997). Specific jurisdiction arises when a defendant's specific contacts with the forum state give rise to the cause of action. *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414 (1984).

As a general rule, a court should freely give leave to amend a complaint that has been dismissed. Fed. R. Civ. P. 15(a). However, a court may deny leave to amend when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *see Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## IV.   DISCUSSION

### A. General Personal Jurisdiction

A Court may exercise general personal jurisdiction over a defendant corporation if its activities in the forum state are "continuous and systematic" to the extent that the corporation could be considered "essentially at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Here, Plaintiffs assert that the thirty-five employees loaned from KDS to Kyocera America and KDDA renders KDS "at home" in California.[3] (Supp. Opp'n 3.) The Court finds this argument unpersuasive.

KDS has no physical presence in California and, as a major international corporation, employs thousands of employees worldwide. (Supplemental Reply ("Supp. Reply") 7, ECF No. 60.) The handful of employees KDS loaned to Kyocera America and KDDA in no way come close to rendering KDS "essentially at home" in

---

[3] Plaintiffs did not raise jurisdiction arguments as to KDT.

5

California.  Moreover, Plaintiffs have failed to provide any specific details about the nature or duties of these employees—or even how long they have been in California. In fact, Plaintiffs have failed to show how these employees have benefited KDS or "allow[ed] or promote[d] the transaction of business within [California]" at all. (Supp. Opp'n 3.)  *See Sher*, 911 F.2d at 1362.  With only these thirty-five employees as "evidence" of KDS's activities in California, Plaintiffs have simply failed to connect the dots between these employees and any purposeful action or decision made by KDS that would render KDS "essentially at home" in California.  The Court does not know the duties of these employees, whether their status is temporary or permanent, or virtually any other information besides the fact that they exist.  As such, the Court refuses to speculate and finds the existence of these employees insufficient to convey general personal jurisdiction.

## B. Specific Personal Jurisdiction

A court may exercise specific personal jurisdiction over a nonresident defendant when the defendant has at least "minimum contacts" with the relevant forum such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316 (internal quotation marks and citation omitted).  The Ninth Circuit applies a three-prong test to determine whether a defendant has such minimum contacts: (1) the defendant must purposefully avail itself of the benefits and protections of the forum state; (2) the claim must arise out of, or be related to, the defendant's forum-related activity; and (3) the exercise of jurisdiction must comport with fair play and substantial justice. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  The plaintiff bears the burden of proving the first two prongs of the test. *Id*.  If the plaintiff succeeds in establishing both of these prongs, the burden then shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable. *Id*.

To have purposefully availed itself of the privilege of doing business in the forum, a defendant must have "performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Sher*, 911 F.2d at 1362 (internal quotation marks and citation omitted).  Courts have continued to refine this prong, recognizing that the rule serves to ensure "that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)  (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)).  While a defendant need not have actually been physically present in the forum state to be subject to personal jurisdiction there, the defendant still must have "purposefully directed" its commercial efforts at the forum state's residents to satisfy the purposeful availment prong.  *Burger King*, 471 U.S. at 475–76.  The second prong is satisfied only if the plaintiff's claims would not have occurred but for the defendant's contacts with the forum state. *Panavision Int'l, L.P. v. Toeppen*, 938 F. Supp. 616, 621–22 (C.D. Cal. 1996).

Here, Plaintiffs have failed to establish both the first and second prongs of the minimum contacts test, and this Court thus lacks specific jurisdiction over the Defendants.  The Court will discuss separately how neither KDS nor KDT have the minimum contacts necessary for this Court to exercise jurisdiction.

**A.    KDS Does Not Have Sufficient Connections To California.**

**1.    KDS Did Not Have Sufficient Control over Kyocera America to Convey Jurisdiction.**

Plaintiffs point to the actions of Kyocera America, KDS's wholly-owned subsidiary, as evidence of KDS's purposeful availment of California's benefits and protections.  (KDS Opposition ("KDS Opp'n") 9–10, ECF No. 19.)  While it is undisputed that Kyocera America sells a large volume of products to California consumers, collects revenue in California, and has facilities in California, Plaintiffs have failed to connect these activities to a purposeful direction or decision made by

KDS. (*Id.*; KDS Mot. 8.)  Any KDS product that enters California is first sold in Japan to Kyocera America, who in turn transports it to California.  (KDS Mot. 8.)  It is Kyocera America—not KDS—that ultimately decides who to sell these products to and where they end up.  (*Id.*)  While there is no argument that Kyocera America has purposefully availed itself of the benefits and protections of California, KDS, on the other hand, does not have any such contact with California.

Nor can the Court give weight to Plaintiffs' argument that KDS's and Kyocera America's shared officers and directors show KDS's purposeful direction.  (Supp. Opp'n 5.)  As Defendants rightfully note, an overlap of directors between a parent corporation and its subsidiary does not serve to expose the parent to liability.  *See United States v. Bestfoods*, 541 U.S. 51 (1998) (finding that it is a "well established principle [of corporate law] that directors and officers holding positions with a parent and its subsidiary can and do change hats to represent the two corporations separately, despite their common ownership.)  As such, the Court refuses to bind the actions of these two separate companies together—and find them the one and the same for jurisdiction purposes—simply because they share similar leadership.

### 2. KDS's Connection to Kyocera Document Solutions Development America is Irrelevant to the Case at Bar.

Plaintiffs further offer the actions of KDDA to connect KDS to California. (Supp. Opp'n 3.)  KDDA develops and designs hardware and software for Kyocera products and has two research and development sites in California; the entity also has fifteen employees who are designated as KDS employees. (Okajima Decl. ¶ 2; Supp. Opp'n 3.)  Even assuming for the sake of argument that these connections create a sufficient connection between KDS and KDDA to satisfy the first prong of the minimum contacts test, any connection between KDS and KDDA fails the second prong, as Plaintiffs' claims neither arise out of nor are related to KDDA's business activities in California.  *See Schwarzenegger*, 374 F.3d 797 at 802.  According to

1    Shinzo Okajima, KDS's General Manager of the General Affairs Division, KDDA did
2    not develop, design, or manufacture any hardware or software used in the CS-3035,
3    the printer which caused the fire sparking this lawsuit.  (Okajima Decl. ¶ 2.)  As such,
4    KDS's involvement with KDDA is irrelevant for purposes of this motion.

5              **3.    KDS Did Not Make Any Affirmative Actions Directed**
6                      **Towards California**

7    The court is also unpersuaded by Plaintiffs' contentions that Kyocera America's
8    incorporation in California or the fact that another branch of the Kyocera corporate
9    family, Kyocera International, has its headquarters in California conveys personal
10   jurisdiction over KDS.   (KDS Opp'n 3.)    While these facts may show KDS's
11   awareness that some of their products (but not necessarily the products at issue in this
12   litigation) may likely reach California consumers, Plaintiffs must show "something
13   more" than mere knowledge or expectation that the Defendant's products will enter
14   the forum state.  *See Bombardier Recreational Prods., Inc. v. Dow Chem. Canada
15   ULC*, 216 Cal. App. 4th 591, 604 (2013) (finding that "mere knowledge, without
16   something more, is insufficient to establish jurisdiction in a forum state.").  Plaintiffs
17   have not provided sufficient evidence to carry this burden.

18   Nor is the Court persuaded by Plaintiff's argument that a 2014 meeting between
19   Hiroyoshi Takada, a KDS employee, and a supplier in Irvine, California is a
20   "purposeful availment" of the benefits and protections of California.  (Supp. Opp'n 8.)
21   Given KDS's international business portfolio and southern California's reputation as a
22   hub for international business ventures, a single meeting with a supplier six years after
23   the 2008 fire cannot be considered a purposeful availment of the forum state, but
24   rather a "random or fortuitous event" that is irrelevant in the jurisdiction analysis.  *See
25   Burger King Corp.* 471 U.S. at 475 (1985).

26   Lastly, the Court finds that the sales figures "discovered" during the
27   supplemental discovery period do not conclusively tie KDS to Kyocera America.

(Supp. Opp'n 8.)   While KDS may receive 50% of Kyocera America's profits, Plaintiffs have again failed to connect these profits to California.   (*Id.*)   The Court does not know where these profits came from or whether KDS took any affirmative actions to create profits in the California market.   Thus, the sales figures cannot be considered for this Court's exercise of jurisdiction.

In sum, as Justice Kennedy wrote in *J.McIntyre Machinery v. Nicastro*, "it is the defendant's actions, not his expectations, that empower a State's courts to subject him to judgment."   564 U.S. 873, 883 (2011).   Thus, while KDS may have reasonably expected that some of its products could end up in the hands of a few California residents, Plaintiffs have not offered any evidence to show that KDS itself performed the "affirmative conduct" necessary to for this court to exercise personal jurisdiction over it.  *See Sher*, 911 F.2d at 1362.

**B.     KDT's Connection to California is too Attenuated to Convey Jurisdiction**

KDT's connections to California are even further removed than KDS's, and as such this Court likewise refuses to exercise personal jurisdiction over KDT.   All products manufactured by KDT are first sold to a Hong Kong corporation before being sold to KDS, who in turns sells the products to Kyocera America, who *then* sells the product to local distributors.   (Inoko Decl. ¶ 9.)   Such a tenuous chain of international sales cannot connect KDT to California and Plaintiffs do not offer any evidence to show how this chain of sales constitutes an "affirmative action" by which KDT avails itself of California. *See Sher*, 911 F.2d at 1362.

Furthermore, the Court is unpersuaded by Plaintiffs argument that KDT's role in the global Kyocera Group subjects KDT to the personal jurisdiction of this Court. (KDT Opp'n 6.)   As discussed above, many entities within the Kyocera Group are incorporated in California.   (*Id.* 3.)   However, "[j]udicial jurisdiction over the parent corporation will give the state judicial jurisdiction over the subsidiary corporation

[only] if the parent so controls and dominates the subsidiary as in effect to disregard the latter's independent corporate existence." *Mathes v. Nat'l Util. Helicopters Ltd.*, 68 Cal. App. 3d 182, 188–90 (1977).  One corporation can be deemed dominant over another when there is "something more than that amount of control of one corporation over another which mere common ownership and directorship would indicate." *Id.* at 190.  Plaintiffs offer no specific evidence that Kyocera America or Kyocera International exert any such dominance over KDT.  Plaintiffs only offer Kyocera Corporate's global fiscal report, a document that groups every Kyocera subsidiary together for its analysis, to claim that Kyocera considers itself as one "singular group that operates collectively."  (KDT Opp'n 6–7.)  This report, however, does not demonstrate how Kyocera America or Kyocera International dominates—or even influences—KDT.

Finally, Plaintiffs' contention that KDT is subject to this Court's jurisdiction because it placed its product in the stream of commerce is outdated and moot. Plaintiffs cite *As You Sow v. Crawford Labs, Inc.*, 50 Cal. App. 4th 1859 (1996), and *Bridgestone Corp. v. Super. Ct.*, 99 Cal. App. 4th 767 (2002), as authority for this proposition.  However, neither case is relevant or controlling.  In *As You Sow*, an Illinois manufacturer did not use a subsidiary to place its products in the stream of commerce, but rather made sales in his own name.  50 Cal. App. 4th 1859.  The tenuous steps between a subsidiary like Kyocera America and KDT are inapposite to a businessman who personally places products in a commercial venue.  And *Bridgestone*, while factually similar to the case at bar, has been superseded by *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011) and *Bombardier Recreational Prods., Inc. v. Dow Chemical Canada ULC*, 216 Cal. App. 4th 591 (2013).  In *Nicastro*, the Supreme Court found that a company's act of placing a product into the stream of commerce, without any tailored, deliberate action, does not create personal jurisdiction just because the product later ended up in the forum state.  564 U.S. at

873.  Furthermore, in *Bombardier*, the state appellate court rejected the "stream of commerce" theory by holding that "[a]n inquiry into a foreign defendant's purposeful availment of the forum state's benefits must find more than merely entering a product into the stream of commerce with knowledge the product might enter the forum state." 216 Cal. App. 4th at 602.  Again, as discussed above, Plaintiffs offer no evidence offering anything more than KDT's "mere knowledge" that its products *might* enter California.  As such, the Court rejects any argument that KDT is subject to its jurisdiction.

Even after additional discovery, it is clear that Plaintiffs have no facts that can cure their deficient jurisdictional claims.  *See Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (denying leave to amend where "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."); *see also Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  Accordingly, because the Court lacks personal jurisdiction over the Defendants, the Court hereby **GRANTS** Defendants' Motions to Dismiss **WITH PREJUDICE**.  (ECF No. 7, 12.)

## V.    CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' Motions to Dismiss with prejudice.  (ECF Nos. 7, 12.)  The Clerk is ordered to close this case.

**IT IS SO ORDERED.**

July 25, 2016

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**

12